AFFIRM Opinion Filed; September 18, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-10-01132-CV

## CLAY M. HOLLOWAY, Appellant

### V.

## GIDEON DEKKERS AND TWIN LAKES GOLF COURSE, INC., Appellees

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 09-07048**

# OPINION

Before Justices Lang, Murphy, and Myers
Opinion By Justice Murphy

Clay M. Holloway sued Gideon Dekkers and Twin Lakes Golf Course, Inc. for breach of contract and fraud in the inducement after Holloway was terminated from his position as head golf professional at Twin Lakes. He appeals the trial court's summary judgment granted in favor of Dekkers and Twin Lakes, which resulted in dismissal of Holloway's claims. We affirm.

## BACKGROUND

Twin Lakes is a Texas corporation that operates a golf course located in Canton, Texas; Dekkers is an officer of the corporation. Holloway, a PGA professional, met with Dekkers and others in mid-July 2008 about becoming the head golf professional at Twin Lakes. Dekkers offered Holloway the job, and Holloway agreed to start work as soon as he could move to Texas from

Illinois. At the July meeting, the parties resolved: (1) the duration of Holloway's contract would be for three years, (2) Holloway would receive a salary of $60,000 per year plus paid time off for vacation and sick leave, and (3) Twin Lakes would pay Holloway's PGA dues and continuing education expenses. During the next two weeks, they continued to negotiate other employment terms proposed by Holloway.

By e-mail dated July 22, 2008, Holloway sent Dekkers the elements of his employment proposal. Holloway's proposal included, among other things, the three-year contract term to commence in August 2008, the agreed-to base salary, provisions for vacation and sick leave, health benefits, and a bonus schedule to be paid based on revenues and sales. During a telephone conversation between Dekkers and Holloway around that same time, Dekkers expressed concerns about the expense and three-year duration of the contract. Holloway responded he would be content to work for a one-year term with the understanding that prior to the expiration of that period, they would renegotiate the contract for an additional three-year period if Holloway fulfilled Dekkers's performance expectations. Holloway also sent Dekkers another e-mail on July 22 stating the "numbers [he] put together were high" and that he would be "very comfortable operating within [his] base salary and allowing [Dekkers] to name any additional provisions as [Dekkers] may deem acceptable." Holloway closed the e-mail by stating the "salary offer was fair" and instructing Dekkers to "decide if there is any additional benefit to be realized."

Holloway started work at Twin Lakes on August 5, 2008. Within a week of that date, Dekkers's daughter-in-law, Carri Dekkers, presented Holloway with a one-page employment agreement, dated July 23, 2008. The document was drafted by Carri. It outlined the benefits of the position, including a $60,000 base salary, "first year" incentives from the pro shop and course fees, vacation and sick time, and allowances for clothing and meals. The document also listed the services

Holloway was to provide. As to term, the document provided for a "[y]early contract that will be up for renewal after annual performance evaluation." It also contained the recitation, "This contract is hereby agreed upon by both [Dekkers and Holloway] and verified by" their signatures. Holloway signed the two originals of the document. The signature line for "Deon Dekkers: Owner of Twin Lakes" remained blank. Holloway made a copy of the document, but he never presented it to Dekkers to sign.

Approximately eight weeks later, on September 30, 2008, Holloway was terminated from his employment at Twin Lakes. As a result, he filed suit against both Dekkers and Twin Lakes for breach of contract and fraud in the inducement. Holloway alleged he entered into an employment contract with Dekkers and Twin Lakes in August 2008, effective August 5, 2008, and that their act in terminating him constituted a breach of that contract. In support of his fraud in the inducement claim, Holloway alleged Dekkers made various representations regarding "intentions and plans for Twin Lakes" in an effort to induce Holloway to leave his job in Illinois and move to Texas. Specifically, Holloway alleged Dekkers represented Holloway "would have a term of employment under the contract for a period of at least one (1) year," the one-year contract would be renegotiated and replaced with a three-year contract prior to the anniversary, Holloway would be included in any staff meetings concerning the operation of the club, and that Dekkers intended to operate Twin Lakes as a private club versus a daily fee operation. Holloway also alleged that in reliance on Dekkers's representation that the term of employment under the contract "would be for a period of at least three (3) years," he moved with his wife from Illinois to Texas.

Appellees moved for summary judgment on Holloway's claims, arguing his causes of action based on the existence of an employment agreement must fail as a matter of law because the agreement as alleged by Holloway was unenforceable under the statute of frauds. Appellees also

maintained that (1) even if Holloway had a signed contract, he did not perform his job duties, (2) Holloway's claims were barred by the doctrines of res judicata and collateral estoppel based on resolution of Holloway's claim with the Texas Workforce Commission, and (3) alternatively, Holloway's alleged damages were capped at $21,907.[1]

The summary-judgment motion was supported with excerpts from Holloway's deposition as well as certain exhibits from that deposition. One exhibit was the July 23 document signed by Holloway but not by Twin Lakes or Dekkers. Appellees also relied on Dekkers's affidavit, in which he testified that neither he nor Twin Lakes signed a written employment contract with Holloway. The only proof Holloway offered in response to appellees' motion was his own affidavit, which attached and adopted by reference "emails which preceded [Holloway's] move to Dallas." Holloway also objected to several statements contained in Dekkers's affidavit and to the summary-judgment evidence related to the decision of the Texas Workforce Commission.

Appellees filed objections to Holloway's affidavit. They identified specific paragraphs of the affidavit they claimed were a sham because they contradicted Holloway's deposition testimony. Appellees also objected to certain statements as being conclusory.

The trial court granted appellees' motion for summary judgment without specifying the basis for its ruling and dismissed Holloway's claims. In the same order, the trial court sustained appellees' objections to Holloway's affidavit. It did not rule on Holloway's objections to appellees' summary-judgment evidence.

---

[1] After he filed this lawsuit, Holloway and his wife filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. On one schedule Holloway prepared as part of the bankruptcy proceeding, Holloway listed his "[p]ending claim against Twin Lakes Golf Course, et al" as "exempt" property valued, without deduction, at $21,907.00.

## DISCUSSION

Holloway raises seven issues on appeal. In five of those issues, he challenges all bases on which the trial court could have based its summary judgment. Specifically, he contends the trial court erred in granting the motion because there was evidence that his termination constituted a breach of his employment contract and Dekkers's statements induced him to move from Illinois to Texas (Issues One and Two); he asserts the statute of frauds and doctrines of res judicata and collateral estoppel do not apply (Issues Three and Four); and he maintains the trial court erred in concluding his damages were capped at the amount listed as the value of the lawsuit in his bankruptcy filings (Issue Seven). In his remaining two issues, Holloway argues the trial court erred when it sustained appellees' objections to his summary-judgment affidavit (Issue Five) and refused to rule on his objections to appellees' summary-judgment evidence (Issue Six).

### Legal Standards

We review de novo the trial court's summary judgment. *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 418 (Tex. App.—Dallas 2012, no pet.). When reviewing a traditional summary judgment granted in favor of the defendant, we determine whether the defendant conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Beesley*, 358 S.W.3d at 418. The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). In deciding whether a disputed material fact issue exists precluding summary judgment, we must take evidence favorable

to the non-movant as true, and we must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Sysco Food Servs.*, 890 S.W.2d at 800. When, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

We review a trial court's decision to admit or exclude summary-judgment evidence under an abuse of discretion standard. *Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C.*, 180 S.W.3d 889, 892 (Tex. App.—Dallas 2005, pet. denied) (op. on reh'g); *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 852 (Tex. App.—Dallas 2003, no pet.). We must uphold the trial court's ruling if the record shows any legitimate basis supporting that ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

## Statute of Frauds

We begin with Holloway's third issue and consider whether the agreement, as alleged by Holloway, falls within the statute of frauds. Holloway contends "the contract entered into between [Holloway] and [appellees] under the law does not violate the Statue of Frauds" and therefore, the trial court erred in granting summary judgment for appellees on that basis.

### 1. Applicable Law

The statute of frauds concerns problems of proof and exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing and signed by the parties. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001); RESTATEMENT (SECOND) OF CONTRACTS § 131 cmt. c (1981). The statute of frauds is an affirmative defense in a breach of contract suit and renders a contract that falls within its purview unenforceable. *See* TEX. R. CIV. P. 94; TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2009); *see also S & I Mgmt., Inc. v. Sungju*

*Choi*, 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.) ("Under the statute of frauds, certain contracts are not enforceable unless they are in writing and signed by the person against whom enforcement of the contract is sought.").

The statute of frauds encompasses agreements that are "not to be performed within one year from the date of making the agreement." TEX. BUS. & COM. CODE ANN. § 26.01(b)(6). Thus, when a promise or agreement, either by its terms or by the nature of the required acts, cannot be completed within one year, it falls within the statute of frauds and is not enforceable unless it is in writing and signed by the person to be charged. *See id.* § 26.01(a), (b)(6); *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam); *see also Chevalier v. Lane's, Inc.*, 213 S.W.2d 530, 533 (Tex. 1948); *C.S.C.S., Inc. v. Carter*, 129 S.W.3d 584, 590 (Tex. App.—Dallas 2003, no pet.). If the agreement is capable of being performed within one year, it is not within the statute of frauds. *See Gerstacker v. Blum Consulting Eng'rs, Inc.*, 884 S.W.2d 845, 849 (Tex. App.—Dallas 1994, writ denied). The question of whether an agreement falls within the statute of frauds is one of law. *See Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961); *Biko v. Siemens Corp.*, 246 S.W.3d 148, 159 (Tex. App.—Dallas 2007, pet. denied). Yet the question of whether an exception to the statute of frauds applies is generally a question of fact. *See Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

In determining whether an agreement is capable of being performed within one year, courts use two points of reference: (1) the time of making the contract and (2) the time when performance is to be completed. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(6); *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no writ) (to measure contract duration for statute-of-frauds purposes, the "court simply compares the date of the agreement to the date when the performance under the agreement is to be completed"). And if there is a year or more between those two

reference points, then a writing is required to render the agreement enforceable. *Young*, 917 S.W.2d at 508.

## 2. Analysis

Holloway alleged he entered into an employment agreement with Dekkers and Twin Lakes, which he contends was a "[y]early contract that will be up for renewal after annual performance evaluation." Holloway argues this agreement is not within the statute of frauds because the "yearly contract" provision states "on its face" that it is for "less than a year"—that is, "Holloway would be employed for 364 days before his performance review." Holloway also maintains the statute of frauds is inapplicable because his performance review could have occurred "in late June" so it was capable of being performed within one year.

The record before us, however, shows that the agreement could not be performed within one year of the date it was made. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(6). Appellees' summary-judgment proof included portions of Holloway's deposition in which he testified to the oral agreement he reached with Dekkers at the July meeting. Holloway explained that at that meeting they agreed Holloway would come to work as the head golf professional at Twin Lakes for a period of three years to begin "[a]s soon as [he] could get there." They also finalized some employment terms, such as salary and other benefits, but left other terms for later negotiations. Holloway confirmed they did not sign anything at that July meeting. He specifically testified that he left the meeting with the understanding that once he started work at Twin Lakes (after giving two week's notice to his former employer), he would not be terminated from his position as head golf professional for a three-year period of time.

Holloway further testified to the telephone conversation he had with Dekkers in late July, "[j]ust prior" to his arrival in Texas. In that conversation, the three-year term changed to a one year.

He said that Dekkers called to tell him that with all the benefits Holloway requested, Dekkers was concerned the contract was too expensive. Holloway told Dekkers the numbers he put together were "merely a proposal." He said he would be "comfortable by going to a one year" contract with the understanding that his contract would be renewed with a three-year "deal" before the anniversary date. Holloway testified to the nature of the one-year agreement as follows:

> Q. Now, you were saying that you were comfortable with a one-year deal, but that prior to the — prior to the one year, y'all would renegotiate an additional three years?
>
> A. Correct.
>
> Q. Am I understanding this together that — I just want to make sure I'm clear – that your employment that you were going to start on August 5th was going to be for at least one year, and if you could, you'd renegotiate it for an additional two or for an additional three?
>
> A. Three.
>
> Q. Okay. All right. So you'd work at least August 5th to August 5th, one year, correct?
>
> A. Yes.
>
> Q. And if you could not reach terms on a renegotiation, that would be it?
>
> A. Correct.
>
> Q. And if you could reach terms, you'd reach terms for an additional two years?
>
> . . .
>
> A. Did you say an additional two or three?
>
> Q. An additional two?
>
> A. Three.
>
> Q. Okay. An additional three.
>
> A. So it would be a total of four, if we worked out our agreement.

Holloway also testified that the July 23 document prepared by Carri and presented to him after he started work on August 5 was the "end agreement" of what elements Dekkers agreed to from the proposal Holloway prepared and gave to Dekkers.

Although Holloway argues on appeal that the agreement was "clearly intended" to be for a period of 364 days or "less than a year," he specifically testified to a one-year agreement that was made in mid-to-late July 2008 and began on August 5, 2008. If Holloway had worked for Twin Lakes for the one-year term as contemplated by the July 23 document, he would have worked through August 4, 2009, one year later. If you counted the days from the July 23 date reflected on the document Holloway signed to the date he completed his performance on August 4, 2009, the term plainly exceeded one year. Thus, to the extent Holloway alleges Dekkers and Twin Lakes breached an agreement based on the July 23 document, that agreement is within the statute of frauds. As a result, the agreement is unenforceable because it is not signed by the person to be charged. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6); *Niday*, 643 S.W.2d at 920.

We reach the same result even if we do not consider an agreement based on the July document. *See Sysco Food Servs.*, 890 S.W.2d at 800 (viewing evidence in light most favorable to non-movant). Holloway testified his employment commenced on August 5, 2008 and would be completed August 5 of the next year. Specifically, he said he would work "at least August 5th to August 5th" and would work for a total of four years if they "worked out [their] agreement." The period from August 5, 2008 to August 5, 2009, is one year and one day or 366 days. Thus, Holloway's own statements indicate the job could not be performed within one year. *See Cruikshank v. Consumer Direct Mortg., Inc.*, 138 S.W.3d 497, 501 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (accepting as true non-movant's own deposition testimony that oral employment contract could not be performed within one year).

Holloway's argument that the timing of his performance review—possibly "in late June"—could have made the agreement performable within one year, does not change the analysis. Specifically, he relies on *Gerstacker v. Blum Consulting Engineers, Inc.* to support his assertion. That case involved an oral promise of employment for as long as Gerstacker's performance was satisfactory. 884 S.W.2d at 847. The employer moved for summary judgment, which was granted, on Gerstacker's claims for breach of contract, promissory estoppel, and fraud based on a statute-of-frauds defense. *Id.* at 848. This Court determined that the oral contract was not within the statute of frauds because the agreement to employ Gerstacker was measured in quality of performance, not in months or years, and such a contingency makes the employment relationship one that can be performed within one year. *Id.* at 851. We therefore reversed the summary judgment and remanded for further proceedings. *Id.* Unlike the oral contract in *Gerstacker*, the agreement Holloway claims Dekkers and Twin Lakes breached was for a one-year term; it was not one in which the length of performance could cease upon the happening of some expressed contingency such as a performance review. Thus, Holloway's argument and reliance on *Gerstacker* do not affect our conclusion.

Holloway claims he raised a fact issue on appellees' statute-of-frauds defense, relying solely on his affidavit. His affidavit contained the following statements concerning the length of his employment:

> Gideon Dekkers represented to me that if I would move from Chicago to Texas I would be employed, under written agreement which could be performed within one year, and thereafter would annually be subject to renewal. Therefore, the agreement by itself could be performed within one year.

Appellees objected to these statements, however, because the statements contradicted Holloway's deposition testimony without explanation and were legally and factually conclusory. The trial court sustained appellees' objections.

A conclusory statement is one that does not provide the underlying facts to support the statement. *Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.). Conclusions in an affidavit are insufficient either to support summary judgment or to raise a fact issue in response to a summary-judgment motion. *See Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *James L. Gang & Assocs., Inc. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 442 (Tex. App.—Dallas 2006, no pet.). By stating that the agreement was one which could be performed within one year, Holloway asserted nothing more than a conclusion. He does not set forth facts that would explain how or why this agreement could be performed within one year or otherwise provide details to support his conclusion. The trial court reasonably could have determined that Holloway's affidavit statement does not contain sufficient factual detail to qualify as proper summary-judgment proof. We therefore conclude the trial court did not abuse its discretion in sustaining appellees' objections to the quoted statement. To the extent Holloway asserts in his fifth issue that the trial court erred when it sustained appellees' objections to his affidavit regarding the quoted statement, we overrule that issue.

Holloway's final assertion that the statute of frauds does not bar his suit is based on an argument grounded in equity. He argues that when one has "performed his part of the bargain," principles of equity will treat the oral agreement as enforceable because "it would be perpetuating a fraud on him to allow the other party to repudiate the contract and set up the statute of frauds." We agree partial performance is an exception to the statute of frauds. *See Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). We do not agree the summary-judgment record supports its application here.

To remove an oral agreement from the statute of frauds, the partial performance must be "unequivocally referable" to the agreement. *Id.* That is, the acts "must be such as could have been

–12–

done with no other design than to fulfill the particular agreement sought to be enforced." *Id.* at 439–40. Although it is unclear from Holloway's argument what part of the bargain he performed, it appears the partial performance he relies on is his rendition of services to Twin Lakes. He argued in response to appellees' summary-judgment motion that he "performed the job duties and responsibilities in the contract and Dekkers accepted Holloway's performance of said duties." But a salary compensates for services rendered; if a person receives payment for his services, those services will not act as an exception to the statute of frauds. *Biko*, 246 S.W.3d at 161; *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ) ("Rendition of services for which a person receives a monthly salary is insufficient to take the alleged agreement out of the statute of frauds because the services were fully explained by the salary without supposing any additional consideration."). Holloway does not suggest he did not receive compensation or other benefits during the time he worked at Twin Lakes. Nor does the summary-judgment record show lack of compensation. Thus, partial performance as an exception to the statute of frauds is not applicable in our de novo review of this case.

After reviewing the summary-judgment record, we conclude appellees established as a matter of law that the employment agreement, as alleged by Holloway, falls within the statute of frauds. The agreement is thus unenforceable against appellees. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6); *Dobson v. Metro Label Corp.*, 786 S.W.2d 63, 66 (Tex. App—Dallas 1990, no writ).

### a. Application to Holloway's Breach-of-Contract Claim

To prevail on his breach-of-contract claim, Holloway must prove (1) the existence of a valid contract; (2) his performance or tendered performance; (3) appellees' breach of the contract; and (4) damages as a result of the breach. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227

S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.). The agreement that Holloway claims appellees breached is unenforceable under the statute of frauds. He therefore cannot prove the existence of a valid contract. His breach-of-contract claim fails as a matter of law.

### b. Application to Holloway's Fraudulent-Inducement Claim

Texas law imposes a duty to abstain from inducing another into a contract through the use of fraudulent misrepresentations. *Haase*, 62 S.W.3d at 798; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). But there can be no breach of that duty if the plaintiff "is not induced into a contract." *Haase*, 62 S.W.3d at 798. Stated another way, without a binding agreement, there is no detrimental reliance, and thus, no fraudulent-inducement claim. *Id.* This is because fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Id.* at 798–99. The only species of fraud alleged by Holloway was fraudulent inducement to enter the agreement he alleges was breached. We have concluded that agreement is unenforceable because it falls within the statute of frauds. For this reason, on this record, Holloway's fraudulent-inducement claim also fails as a matter of law. *Id.* at 799; *James L. Gang & Assocs.*, 198 S.W.3d at 442.

Having determined that Holloway's breach-of-contract and fraudulent-inducement claims fail as a matter of law, we conclude the trial court properly granted summary judgment. We overrule Holloway's third issue on appeal.

Based on our resolution of Holloway's third issue, we need not address his first, second, fourth, or seventh issues challenging appellees' other summary-judgment grounds. *See* TEX. R. APP. P. 47.1. We also do not reach the merits of the trial court's other evidentiary rulings related to

Holloway's summary-judgment affidavit (Issue Five) or the merits of Holloway's complaint that the trial court failed to rule on his objections to appellees' summary-judgment evidence (Issue Six). The evidence made the subject of these rulings, and failure to rule, would not affect our analysis or conclusion in this appeal.

## CONCLUSION

The trial court properly granted summary judgment in favor of appellees. The agreement that Holloway alleges appellees breached falls within the statute of frauds. Both his breach-of-contract and fraudulent-inducement claims depend on the enforceability of that agreement. Those claims therefore fail as a matter of law. We affirm the trial court's judgment.

_Mary Murphy_
MARY MURPHY
JUSTICE

110631F.P05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CLAY M. HOLLOWAY, Appellant

No. 05-10-01132-CV     V.

GIDEON DEKKERS AND TWIN LAKES
GOLF COURSE, INC., Appellees

Appeal from the 44th Judicial District Court
of Dallas County, Texas. (Tr.Ct.No. 09-
07048).
Opinion delivered by Justice Murphy,
Justices Lang and Myers participating.

In accordance with this Court's opinion of this date, the trial court's summary judgment order dated June 14, 2010 is **AFFIRMED**. It is **ORDERED** that appellees Gideon Dekkers and Twin Lakes Golf Course, Inc. recover their costs of this appeal from appellant Clay M. Holloway.

Judgment entered September 18, 2012.


_____
MARY MURPHY
JUSTICE