**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 18-20125

_____

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2019

Lyle W. Cayce
Clerk

GLASSELL NON-OPERATED INTERESTS, LIMITED; ACG3 MINERAL INTERESTS, LIMITED; YATES ENERGY CORPORATION,

Plaintiffs - Appellees

v.

ENERQUEST OIL & GAS, L.L.C.,

Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before HIGGINBOTHAM, ELROD, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

A group of oil companies agreed to cooperatively develop oil prospects in Texas. One of the parties, EnerQuest Oil & Gas L.L.C., acquired an interest in the specified area after the agreement took effect, but then refused to offer a share of those interests to the other parties. After the acquisition, other parties to the agreement—Glassell Non-Operated Interests, Ltd., Yates Energy Corporation, and ACG3 Mineral Interests, Ltd. (collectively, "Appellees")—filed suit against EnerQuest. Appellees alleged that EnerQuest breached the contract by refusing to offer a pro-rata share of the newly

No. 18-20125

acquired interests.  Upon examination of the agreement, we conclude that EnerQuest did not breach.

Although the contract requires that the parties share interests acquired within the area of mutual interest ("AMI"), the contract excludes interests already owned by parties from the AMI.  What is excluded from the AMI at the outset may never be included without a new agreement.  Accordingly, we reverse the judgment of the district court and render judgment for EnerQuest.

I.

EnerQuest, Glassell, Yates, and several others entered into a Letter Agreement to develop the Dubose Field, an area in Texas.  Shortly after the Parties signed the Letter Agreement, additional parties sought to join the endeavor.  The original parties allowed the new parties to ratify the agreement (the "Amendment") and then the new parties officially ratified that Letter Agreement (the "Ratification").  The Letter Agreement, Amendment, and Ratification compose the Development Agreement.

The Letter Agreement contains an AMI provision.  The parties generally describe the AMI in § 2.1, which states that the AMI shall cover all lands within the Dubose Field that are acquired after August 1, 2010—the "Effective Date."  Section 2.1 then defines those interests within the AMI that are acquired after the Effective Date as "Acquired Interest."[1]

---

[1] In full, § 2.1 provides the following:

The AMI shall cover all lands within the 40 square miles covered by the Seitel Agreement plus the one-half (1/2) mile halo provided for under the COP/Seitel/Yates Agreement [*i.e.*, the Dubose Field].  The AMI shall cover and apply to (i) royalty interest, mineral interest, overriding royalty interest, production payment interest, net profits interest, or any other type of interest in oil, gas, or other minerals, (ii) any oil and gas lease, or (iii) any farmout agreement, drilling option agreement, acreage contribution agreement, or acreage support agreement, if such interest, lease, or agreement covers or includes lands located wholly or partly within the AMI and which were or are acquired after August l, 2010 (the "Effective Date"), except for any such

No. 18-20125

But the Letter Agreement excludes some interests from the AMI. Section 2.3 of the Letter Agreement excludes "[a]ll interests, leases or agreements owned by a Party prior to the Effective Date." Sections 1.4 of the Amendment and 1.5 of the Ratification include substantially the same provision, so the exclusions apply to both the original parties and new parties.

The parties agreed to share interests that they acquired within the AMI. The Letter Agreement's sharing obligation—found in §§ 2.6 and 2.7—directs that, "[w]ithin thirty (30) business days after a Party acquires an Acquired Interest within the AMI after the execution of this Agreement, such Party shall promptly notify the other Parties in writing of the details of the acquisition of such Acquired Interest." And after an acquiring party has informed the other parties of the gained interests, a party "may elect in writing to acquire its pro-rata share of such Acquired Interest."

A few years after entering the Development Agreement, EnerQuest sought to acquire the Dubose Field interests of DKE and Pati-Dubose (the "DKE/Pati-Dubose interests"). Both DKE and Pati-Dubose were new parties to the Development Agreement. EnerQuest's president emailed Yates' president about the potential acquisition, stating that EnerQuest would be offering the interest to the other parties pursuant to the Development Agreement. But after the transaction closed, EnerQuest determined that the DKE/Pati-Dubose interests were not subject to the AMI. Therefore, according to EnerQuest, the sharing obligation did not apply.

Appellees sued EnerQuest for breach of contract. EnerQuest contested Appellees' construction of the Development Agreement and asserted an

---

interest, lease, or agreement acquired by Glassell from the Estates of Alfred C. Glassell, Jr. or Clare A. Glassell, which are excluded from the AMI. Any such interest, lease or agreement acquired by a Party shall be referred to herein as an "Acquired Interest."

3

No. 18-20125

affirmative defense that the Development Agreement was unenforceable under the Texas Statute of Frauds. *See* TEX. BUS. & COM. CODE § 26.01(a), (b)(4), (5). The district court granted Appellees' motion for summary judgment on liability for breach of contract and denied EnerQuest's motion for summary judgment on the affirmative defense of a violation of the Texas Statute of Frauds. EnerQuest appeals.

## II.

A grant of summary judgment is reviewed *de novo. Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir. 1995)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

"We look to state law for rules governing contract interpretation." *F.D.I.C. v. Firemen's Ins. Co. of Newark, N.J.*, 109 F.3d 1084, 1087 (5th Cir. 1997) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 352 (5th Cir.1996)). Texas contract law governs this dispute.

A contract's construction is a question of law. *See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999) (citing cases). The court must find the parties' intent as expressed in the agreement. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727–28 (Tex. 1981) (citing *McMahon v. Christmann*, 303 S.W.2d 341 (Tex. 1957)). Courts give terms "their plain, ordinary and generally accepted meaning unless the instrument itself shows them to have been used in a technical or different sense." *W. Reserve Life Ins. Co. v. Meadows*, 261 S.W.2d 559, 564 (Tex. 1953) (citing *Hall v. Mut. Benefit Health & Accident Ass'n*, 220 S.W.2d 934 (Tex. Civ. App.—Amarillo 1949, writ ref'd)).

No. 18-20125

A.

The question is: whether the DKE/Pati-Dubose interests should be considered Acquired Interests according to the Development Agreement. If they are Acquired Interests, then they are subject to the sharing obligation.

Under EnerQuest's reading of the Letter Agreement, if *any* party to the Development Agreement owns an interest in the Dubose Field before August 1, 2010, then those interests can *never* be part of the AMI. And because the interests can never be part of the AMI, they can never be Acquired Interests.

Appellees read the Letter Agreement differently. According to Appellees, even if a party owns an interest in the Dubose Field before the Effective Date, when another party purchases that previously-owned interest *after* the Effective Date, then those interests are Acquired Interests. Appellees construe § 2.3 to mean that if a party owns interests in the Dubose Field when that party joins the Development Agreement, then that party does not need to share his previously owned interests. So even though DKE and Pati-Dubose owned the interests before the Effective Date, all that matters is that EnerQuest did not. Therefore, according to Appellees' reading of the Letter Agreement, EnerQuest has to offer to share those new interests, because those interests were within the Dubose Field area and were acquired by EnerQuest after the Effective Date.

Sections 2.1 and 2.3 describe the lands both included and excluded from the AMI. According to § 2.1, the AMI covers various types of interests, leases, and agreements in the Dubose Field "which were or are acquired after" the Effective Date. And "[a]ny such interest, lease or agreement acquired by a Party" is defined as an "Acquired Interest." Therefore, § 2.1 provides that, to be an Acquired Interest, the interest must be (1) within the AMI and (2) acquired after the Effective Date.

5

No. 18-20125

But the Letter Agreement further clarifies what interests are excluded from the AMI. Section 2.3 states that "[a]ll interests, leases or agreements owned by a Party prior to the Effective Date . . . shall not be considered part of or subject to the AMI." DKE and Pati-Dubose are parties to the Development Agreement, and they owned interests in the Dubose Field before August 1, 2010. Therefore, the DKE/Pati-Dubose interests are not part of or subject to the AMI. And because the DKE/Pati-Dubose interests are not part of the AMI, they necessarily cannot be Acquired Interests under § 2.1.

Appellees ask us to look to the purpose of AMI provisions generally and orient our construction according to those purposes. AMI provisions are meant to foster cooperation among the parties to acquire and develop interests. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 905 (Tex. 1982) ("In an area of mutual interest agreement, the parties attempt to describe a geographic area within which they agree to share certain additional leases acquired by any of them in the future."). According to Appellees, EnerQuest acted contrary to those purposes. But we look to the plain text of the Development Agreement—not to "what one side or the other alleges they intended to say but did not." *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010). If Appellees sought to prohibit the type of activity in which EnerQuest engaged, they could have easily done so through the contract.[2]

---

[2] Appellees claim that our reading would render § 2.13 of the Letter Agreement superfluous. We disagree. That section provides that, "should Yates acquire all or any part of the interest of Jalapeno at any time, then Yates does not have to offer that interest to the other Parties to this Agreement. Likewise, should Jalapeno acquire all or any part of the interest of Yates at any time, then Jalapeno does not have to offer that interest to the other Parties to this Agreement." Section 2.13 does not speak to the scope of the AMI, but rather to the sharing obligation between two specific parties (Yates and Jalapeno), to the exclusion of other parties.

No. 18-20125

B.

In the alternative, EnerQuest contends that, even if Appellees' construction of the contract is correct, the contract is unenforceable under the Texas Statute of Frauds.  The Texas Statute of Frauds works as an affirmative defense.  *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013); *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.) (citing TEX. R. CIV. P. 94; TEX. BUS. & COM. CODE § 26.01(a)).  Because we have concluded that EnerQuest did not breach the agreement, the affirmative defense is moot.

\* \* \*

We reverse the district court's judgment and render judgment for EnerQuest.