# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20659

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2020

Lyle W. Cayce
Clerk

RLI INSURANCE COMPANY,

        Plaintiff – Appellee

v.

STEPHEN GLYNN ROBERTS,

        Defendant – Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-1240

Before KING, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:[*]

RLI Insurance Company ("RLI") issued surety bonds on behalf of Northstar,[1] so that Northstar could operate oil and gas wells on public land in Louisiana. These bonds provided security to the Louisiana Department of Natural Resources ("DNR") for the cost of future plugging and abandonment of Northstar's wells. And as part of RLI's deal to issue these bonds— particularly, one called the "Creole Bond"—Stephen Roberts entered into an

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] We use "Northstar" to refer collectively to Northstar Offshore Energy Partners, LLC and Northstar Offshore Group, LLC.

No. 19-20659

Indemnity Agreement with RLI. Roberts was then a partial owner of Northstar. In the event Northstar did not meet its bond obligations, Roberts agreed, among other things, to personally pay the bond premiums to RLI and to personally deposit collateral security with RLI.

As it happened, Northstar did not meet its bond obligations. So, the DNR sued RLI to recover the full amount of the Creole Bond. RLI in turn sought collateral security from Roberts. Roberts refused to pay RLI. So RLI sued him for breaching the Agreement. Only the suit between RLI and Roberts is before us.

The district court granted summary judgment to RLI. Roberts timely noticed an appeal.[2] Our review is *de novo. See Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 654–55 (5th Cir. 2019).

Roberts first claims that RLI does not have standing to bring this breach of contract claim. For RLI to meet Article III standing requirements, it "must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019) (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018)). RLI plainly has standing. It alleges the loss of money (injury-in-fact), caused by Roberts' breach of their Agreement (traceability), that a court can remedy through damages and specific performance (redressability). *See Servicios Azucareros de*

---

[2] The district court also granted summary judgment on RLI's claim that Roberts breached the Agreement by failing to pay bond premiums and that Roberts owed RLI attorneys' fees. Roberts makes no argument about premiums in his briefing. Thus, any challenge to them is forfeited. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal." (emphasis omitted)). And although he does argue that the district court should not have awarded attorneys' fees, his contentions are meritless because he points to no record evidence to dispute RLI's request for fees. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

*Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012). Roberts cannot dispute that RLI suffered an Article III injury by arguing that RLI's claims fail on the merits. *See, e.g.*, *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("When considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." (internal quotation marks and alteration omitted)).

Roberts next argues that even if RLI had standing to bring the case, it is now moot. Roberts argues that the Creole Bond, for which he agreed to provide collateral security, has been discharged and replaced by another bond. Roberts says that discharges RLI's obligations on the bond and, derivatively, lets Roberts off the hook. *See, e.g, Wright Way Constr. Co., Inc. v. Harlingen Mall Co.*, 799 S.W.2d 415, 426 (Tex. App.—Corpus Christi 1990, writ denied); Restatement (Third) of Suretyship & Guaranty § 19 cmt. a (1996). It might be true that RLI will get off the hook for the Creole Bond—indeed, RLI and the DNR appear to have settled. *See Louisiana v. RLI Ins. Co.*, No. 3:19-CV-640 (M.D. La. Mar. 30, 2020) (dismissing case with prejudice due to settlement); *Louisiana v. RLI Ins. Co.*, No. 3:19-CV-614 (M.D. La. Mar. 31, 2020) (same). But it is also irrelevant. All that matters is that the DNR maintained a suit against RLI to collect on the Creole Bond. RLI *still* maintains that Roberts owes it money to pay the costs of that DNR lawsuit. And Roberts *still* maintains he shouldn't have to pay. Accordingly, the legal issues are still disputed, and this case is very much a "live" one. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Next, Roberts turns to bankruptcy law. Prior to this lawsuit, Northstar filed for bankruptcy, and the bankruptcy court entered an order relating to the Creole Bond. Roberts now says that order precludes RLI from filing this suit against him. But Roberts fails to explain how RLI's suit against *him*—"not

directed against the debtor or property of the debtor"—falls within the ambit of the bankruptcy court's order. *Edge Petroleum Operating Co. v. GPR Holdings, LLC, et al. (In re TXNB Internal Case)*, 483 F.3d 292, 301 (5th Cir. 2007). In fact, Roberts emphasizes just how unrelated he is to the debtor, Northstar. He no longer works for Northstar nor owns any part of Northstar. This case is thus far afield from the matters related to Northstar's bankruptcy estate and those proceedings. *Cf. In re Applewood Chair Co.*, 203 F.3d 914, 918 (5th Cir. 2000) ("The general rule is that a discharge in bankruptcy does not affect a guarantor's liability.").

Turning to the merits, Roberts does not dispute that the Agreement is valid under Texas law. Nor does Roberts dispute that he has not paid collateral security to RLI. *See* FED. R. CIV. P. 56(a); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995). Roberts only disputes whether the terms of the Agreement require him to provide collateral security. Under Texas law, we enforce the Agreement between Roberts and RLI as written and according to its terms' "plain, ordinary and generally accepted meaning unless the [Agreement] itself shows them to have been used in a technical or different sense." *Glassell Non-Operated Interests, Ltd. v. EnerQuest Oil & Gas, L.L.C.*, 927 F.3d 303, 306 (5th Cir. 2019) (internal quotation marks omitted).

The Agreement states that RLI "may, in its *sole and absolute discretion*, require [Roberts] provide security, in form and amounts acceptable to [RLI] to secure [Roberts's] obligations." (emphasis added). And among the obligations the collateral security can secure are the "cost and expense of whatsoever kind or nature . . . by reason or in consequence of having executed" the Creole Bond. Nothing in these terms allow Roberts to avoid his security obligations because he thinks RLI will win its dispute with the DNR. Rather, Roberts must pay at RLI's sole discretion. Moreover, the Agreement's plain terms say that RLI can

No. 19-20659

demand that Roberts provide security to cover an expansive category of costs, including those stemming from the DNR's Creole Bond lawsuit.

AFFIRMED.