**REVERSE and RENDER in part; AFFIRM in part; and Opinion Filed April 13, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00824-CV**

**JACK STADTMAN AND SARAH STADTMAN, Appellants**
**V.**
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE,**
**IN TRUST FOR REGISTERED HOLDERS OF LONG BEACH**
**MORTGAGE LOAN TRUST 2005-WL3,**
**ASSET-BACKED CERTIFICATES, SERIES 2005-WL3, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-05554-2018**

**MEMORANDUM OPINION**

Before Justices Molberg, Reichek, and Breedlove
Opinion by Justice Breedlove

The trial court rendered summary judgment for the appellee bank in this suit

for judicial foreclosure of a home equity lien. Borrowers Jack Stadtman and Sarah

Stadtman appeal, contending the trial court erred by admitting certain evidence, by

denying their motion for summary judgment, by granting summary judgment for the

bank, and by awarding the bank its attorney's fees after the bank withdrew its request

for them. Concluding that the bank established its right to judgment as a matter of

law, but that the trial court's judgment improperly includes an award of attorney's fees, we affirm the trial court's judgment in part, reverse in part, and render judgment deleting the award of attorney's fees.

## BACKGROUND

On July 2, 2005, appellant Jack Stadtman signed a Texas home equity note to Long Beach Mortgage Company in the amount of $749,995.00. The same day, Stadtman and his wife Sarah Stadtman executed a Texas home equity security instrument granting Long Beach a lien on their homestead. The maturity date of the loan was August 1, 2035. Long Beach subsequently indorsed the note in blank, and the appellee Bank now has possession of the original note. The Bank is also the assignee of the note and security interest by recorded assignment from Long Beach's successor in interest. The loan has been in default since May 1, 2009.

When Jack Stadtman filed a bankruptcy petition in 2008, the bankruptcy court granted the Bank's motion to lift the automatic stay. The Bank then filed an application in the 199th District Court for an expedited order allowing foreclosure of the lien. *See* TEX. R. CIV. P. 736 (requirements for expedited order proceeding in certain foreclosures). That court granted the application on March 23, 2010, ruling that the Bank "should proceed with foreclosure of the Property under the terms of the security instrument and Texas Property Code § 51.002," but the Bank did not do so.

Several years elapsed with no further payment by the Stadtmans. The Bank sent the Stadtmans notices of intent to accelerate the loan in 2010, 2012, 2013, and 2014, then accelerated the loan on January 20, 2015, when the Stadtmans did not cure the default.

The Bank filed this suit for judicial foreclosure on October 22, 2018, then recorded a notice rescinding the 2015 acceleration. The Bank provided the Stadtmans a new notice of default and intent to accelerate, and a final notice of acceleration on July 18, 2019.

The Bank filed a motion for summary judgment, seeking declarations to support its foreclosure of the lien. The Stadtmans responded, alleging that the Bank did not prove it was the owner and holder of the note and challenging the Bank's request for attorney's fees. In reply, the Bank withdrew its claim for attorney's fees.

The Stadtmans also moved for summary judgment. They argued that limitations on the Bank's claims expired four years after the bankruptcy court's June 15, 2009 order lifting the automatic stay.

The trial court heard the parties' motions on August 23, 2021. After the hearing, the trial court signed orders denying the Stadtmans' objections to the Bank's summary judgment evidence and denying the Stadtmans' motion for summary judgment. The trial court granted the Bank's summary judgment motion and rendered final judgment for the Bank. The judgment included an award of attorney's fees. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

In their "Statement of Issues," the Stadtmans contend the trial court erred by (1) admitting business records unsupported by a proper affidavit, (2) admitting certain affidavit evidence, (3) denying their motion for summary judgment, and (4) concluding that the Bank's suit was not barred by limitations. The argument section of the brief contains additional complaints that the Bank did not establish it was the owner and holder of the note and that the trial court erred by awarding the Bank its attorney's fees.

We review a trial court's decision to grant a motion for summary judgment de novo. *Helix Energy Solutions Grp., Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017). "We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and judgment should be rendered as a matter of law. TEX. R. CIV. P. 166a(c). "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence

and determine all questions presented." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

We review a trial court's decision to admit or exclude summary judgment evidence for abuse of discretion. *Harris v. Showcase Chevrolet*, 231 S.W.3d 559, 561 (Tex. App.—Dallas 2007, no pet.). A trial court abuses its discretion when in acts without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). To obtain reversal of a judgment based on error in the admission or exclusion of evidence, a party must show "that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment." *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). "We must review the entire record to determine whether the judgment was controlled by the evidence that should have been excluded." *Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 864 (Tex. App.—Dallas 2006, no pet.).

### DISCUSSION

We first consider whether the trial court erred by denying the Stadtmans' motion for summary judgment. We then turn to the Stadtman's arguments that the Bank failed to establish its right to judgment as a matter of law.

### A. Limitations

The cause of action for foreclosure of a deed of trust lien accrues, and limitations commences, on the maturity date of the final installment or when the holder exercises its option to accelerate. *Castillo v. Branch Banking & Tr. Co.*,

No. 05-19-00854-CV, 2020 WL 1983361, at *4 (Tex. App.—Dallas Apr. 27, 2020, pet. denied) (mem. op.). Suit must be brought not later than four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a).

"Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. Both notices must be clear and unequivocal." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) (citations omitted). In response to the Stadtmans' motion for summary judgment, the Bank offered evidence of its notices accelerating the maturity of the note and rescinding prior accelerations less than four years prior to filing this suit on October 22, 2018.

In the trial court, the Stadtmans sought summary judgment on the sole ground that limitations began to run on June 15, 2009, the date of the bankruptcy court's order granting the Bank relief from the automatic stay. The Stadtmans did not cite authority to support this proposition, the Bank argues there is none, and we have found none. We conclude the trial court did not err by denying summary judgment for the Stadtmans on this ground. *See Castillo*, 2020 WL 1983361, at *4 (limitations on foreclosure action commences on the maturity date of the final installment or when the holder exercises its option to accelerate.)

On appeal, the Stadtmans rely on several different dates—all more than four years prior to October 22, 2018—in support of their argument that limitations had run. Among other arguments, the Statdmans now contend that limitations began to run in 2010 when the Bank filed its application for expedited foreclosure under

former civil procedure rule 736. We may not consider these arguments on appeal because the Stadtmans did not raise them in the trial court. *Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 521–22 (Tex. App.—Dallas 2011, pet. denied) (in suit on promissory note and guaranty agreement, court of appeals could not consider new limitations argument not expressly presented to trial court); *see also* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Concluding that the trial court did not err by denying the Stadtmans' motion, we decide the Stadtmans' third and fourth issues against them.

## B. Bank's right to foreclose

The Stadtmans argue that a material fact issue exists as to whether the Bank is the owner and holder of the note. They contend the Bank's proof "fails to address any transfer to Washington Mutual Bank, or from Long Beach Mortgage Company," and therefore "fails to connect the dots between Long Beach Mortgage Company and the [Bank]."

The Bank responds that it is the holder of the note because the note is indorsed in blank by the original lender, the Bank is in possession of the original, indorsed-in-blank note, and the Bank offered summary judgment proof of those facts. *See Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex. 1983) (per curiam) (photocopy of note attached to affidavit of plaintiff who swore it was true and correct copy was proper summary judgment evidence).

–7–

The Bank also argues that it is the owner/assignee of the note and security instrument by virtue of the assignment from JPMorgan Chase Bank, N.A., "which reflects an unbroken chain of title" to the Bank from Long Beach, the original lender and beneficiary of the security instrument. The chain of title from Long Beach to JP Morgan Chase to the Bank is shown under the signature block of the assignment and repeated in the verification: "JPMorgan Chase Bank, National Association, as purchaser of the loans and other assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (the –Savings Bank–) from the Federal Deposit Insurance Corporation, acting as receiver for the Savings Bank and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d), as successor in interest to Long Beach Mortgage Company by operation of law."

We conclude the Bank established by summary judgment evidence that it is the owner and holder of the note. *See Zarges*, 652 S.W.2d at 369.

## C. Admission of evidence

We next consider the Stadtmans' challenges to the Bank's summary judgment evidence. They argue the trial court erred by admitting two affidavits of Patrick Riquelme, a Document Control Officer for Select Portfolio Servicing, Inc. (SPS), because (1) the affidavits were not sworn before a notary, (2) the affidavits do not satisfy the business records exception to the hearsay rule because Riquelme lacked personal knowledge of the necessary facts, (3) the affidavits are conclusory, and (4) Riquelme misstated the source of one of the attached documents.

## 1. Requirements for affidavits

An affidavit is "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX. GOV'T CODE § 312.011(1). Summary judgment affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f); *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). "Conclusions in an affidavit are insufficient either to support summary judgment or to raise a fact issue in response to a summary-judgment motion." *Holloway v. Dekkers*, 380 S.W.3d 315, 323 (Tex. App.—Dallas 2012, no pet.). "A conclusory statement is one that does not provide the underlying facts to support the statement." *Id.*

Evidence rule 803(6) establishes an exception to the hearsay rule for certain business records. TEX. R. EVID. 803(6). Subsections (A) through (E) of the rule set forth the requirements for admission. *Id.* A records custodian or other qualified witness must testify that the record was made and kept in accordance with these requirements. *See id.* In addition to documents the business itself creates, "[a] document authored or created by a third party may be admissible as business records of a different business if: (a) the document is incorporated and kept in the course of the testifying witness's business; (b) that business typically relies upon the accuracy of the contents of the document; and (c) the circumstances otherwise indicate the

trustworthiness of the document." *Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3*, 557 S.W.3d 825, 831–32 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (internal quotation omitted); *Cockrell v. Republic Mortgage Insurance Co.*, 817 S.W.2d 106, 112–13 (Tex. App.—Dallas 1991, no writ) ("A document can comprise the records of another business if the second business determines the accuracy of the information generated by the first business.").

### 2. Notarization

The Stadtmans argue that Riquelme's affidavits were not competent summary judgment evidence because they were not signed or sworn to before a notary. They rely on the deposition testimony of Cynthia May, also an SPS document control officer, who provided an affidavit on the Bank's behalf. SPS, a loan servicing company, maintained electronic records of the Stadtmans' loan documents. The Stadtmans cite May's testimony that at SPS, officers' affidavits were signed at workstations in a "document control room" where the officers reviewed supporting documents. May testified there would be 25 to 30 other officers in the room performing the same tasks. The officers would then take their signed affidavit and documents to a notary in the same room. The Stadtmans argue that under these circumstances, the SPS officers' affidavits were not signed or sworn to "before" the notary, as required by § 312.011(1) of the government code and civil procedure rule 166a(f). *See* TEX. GOV'T CODE § 312.011(1); TEX. R. CIV. P. 166a(f).

The Bank responds that § 312.011(1) requires an affidavit to be "sworn to" before an officer, and May explained how this requirement is met. May testified: "Once I reviewed the document and make sure everything's complete, I stamp my name, I stamp my position, I sign my name, and I date the document. Then I hand it—I go to the notaries, raise my right hand, swear to the document, and they take it from there and then I'll sign their book." All of these actions take place in the document control room. We conclude that May's testimony sufficiently established that the Bank's supporting affidavits met the requirements of government code § 312.011(1) and rule 166a(f).

### 3. Personal knowledge

The Stadtmans next contend that Riquelme's affidavits "are not proper business record affidavits" because "there is nothing that shows how Patrick Riquelme knows anything about the events recorded on any third-party documents, how the information is incorporated into the records of SPS, or why the information is trustworthy." In *Botello v. MidFirst Bank*, No. 05-19-00461-CV, 2020 WL 3263434, at *2 (Tex. App.—Dallas June 17, 2020, no pet.) (mem. op.), we considered whether a loan servicing officer's affidavit was sufficient to support the foreclosing lender's motion for summary judgment. We explained that affidavits in support of a motion for summary judgment must be made on personal knowledge and must show how the affiant became familiar with the facts set forth in the affidavit. *Id.* "An affiant's position or job responsibilities can qualify him to have

–11–

personal knowledge of facts and establish how he learned of the facts." *Id.* (internal quotation and citations omitted).

In his affidavits, Riquelme states that he is a Document Control Officer with SPS. He explains his familiarity with SPS's "Loan Records," which he defines as "electronic records, an electronic file of imaged loan documents and correspondence, and hard-copy files of certain original loan documents" for the mortgage loans SPS services. In connection with his job duties and responsibilities as a Document Control Officer, he has access to the Loan Records and knowledge of how the Loan Records are "made, received, and maintained." He states that when SPS receives documents from other parties regarding a loan that SPS services, the documents are placed in the Loan Records at or near the time they are received and are adopted as business records of SPS. He explains that SPS "conducts quality control and verification of the information received from the prior servicer" to ensure its accuracy during the "boarding process." And he explains, "It is the regular practice of SPS to integrate prior servicers' records into SPS's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions. These prior servicer records are integrated and relied upon by SPS as part of SPS's business records and constitute Loan Records of SPS. These Loan Records are kept in the course of SPS's regularly conducted business activity." Riquelme authenticated the records attached to his affidavits as "exact duplicates of the original records of SPS."

We conclude these statements sufficiently describe Riquelme's position and responsibilities and the basis for his personal knowledge. *See Botello*, 2020 WL 3253434 at *3 (affiant's testimony that she was a vice president of the bank and had familiarity with the bank's loan servicing records was sufficient to identify the basis for her personal knowledge); *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 792 (Tex. App.—Dallas 2013, pet. denied) (references to true and correct copies of documents in support of an affidavit can establish personal knowledge); *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 359 (Tex. App.—Dallas 2007, pet. denied) (affiant's testimony that she was both a foreclosure specialist and custodian of records for mortgagee with respect to mortgagor's loan was sufficient to identify the custodian's position and responsibilities, meeting personal knowledge requirement).

### 4. Conclusory statements

The Stadtmans complain that many of Riquelme's statements are "conclusory" because he lacks knowledge about the preparation of the original loan documents or the Stadtmans' default. They cite *Powell v. Vavro, McDonald & Associates, L.L.C.*, 136 S.W.3d 762, 765 (Tex. App.—Dallas 2004, no pet.), in support of their arguments. In that case, we concluded that a travel agency's custodian of records could not provide the testimony required to establish that the Powells had received a refund from MasterCard of funds they had paid the travel agency for a vacation package. *See id.* at 764–65. The custodian relied on notice of

a chargeback the travel agency received from a credit card processing company rather than having any knowledge of MasterCard's recordkeeping. *Id.* at 764.

The Stadtmans acknowledge that under rule of evidence 803(6), "[b]usiness records that have been created by one entity, but which have become another entity's primary record of the underlying transaction may be admissible" under evidence rule 803(6). *See Cockrell*, 817 S.W.2d at 112–13. But they argue rule 803(6) does not apply here because Riquelme lacked the personal knowledge to testify about "the record-keeping practices of the 'predecessor.'" As we have already discussed, Riquelme addressed SPS's practices in verifying and relying on documents it receives regarding the loans it services, consistent with rule 803(6)'s requirements. *See* TEX. R. EVID. 803(6); *Cockrell*, 817 S.W.3d at 112–13. We conclude that Riquelme's testimony about the documentation of the loan and the Stadtmans' default was not conclusory.

### 5. Misstatement about document's source

The Stadtmans also argue that one of Riquelme's statements is false. Riquelme testified that Exhibit 3-C to his August 11, 2021 affidavit, a January 22, 2013 letter giving notice of intent to foreclose, "was created and transmitted by the Harvey Law Group." As the Stadtmans argue, Exhibit 3-C is a letter from Chase Bank to Jack Stadtman; only Exhibits 3-A and 3-B are from the Harvey Law Group. The Bank concedes that the letter was from Chase Bank and that Riquelme made a misstatement, but argues that Riquelme's erroneous description of the letter in 2021

–14–

had no bearing on the efficacy of the notice in 2013.[1] After review of the entire record, we conclude that any error in overruling the Stadtmans' objection to admission of Exhibit 3-C did not cause the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Gee*, 765 S.W.2d at 396; *Lopez*, 200 S.W.3d at 864.

We conclude the trial court did not abuse its discretion by overruling the Stadtmans' objections to the Bank's summary judgment evidence. *See Harris*, 231 S.W.3d at 561. We decide the Stadtmans' first two issues against them.

**D. Attorney's fees**

The Bank concedes that it withdrew its request for attorney's fees in its reply to the Stadtmans' summary judgment response. Accordingly, we sustain the Stadtmans' complaint that the trial court awarded more relief than the Bank requested by awarding its attorney's fees for trial and appeal.

---

[1] The Bank argues, "[w]hile the notice itself could have been relevant because it shows an abandonment of any prior acceleration of the loan as of the date of the notice (a fact the Stadtmans never controverted), whether the notice was created by the Harvey Law Group, as counsel for Trustee, or by Chase, as servicer for Trustee, is irrelevant because both were acting on behalf of Trustee and, in any event, the efficacy of such a notice does not turn on who created it."

## CONCLUSION

We reverse the trial court's awards of attorney's fees to the Bank and render judgment deleting those awards. In all other respects, we affirm the trial court's judgment.

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

210824F.P05



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

JACK STADTMAN AND SARAH
STADTMAN, Appellants

No. 05-21-00824-CV   V.

DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS TRUSTEE,
IN TRUST FOR REGISTERED
HOLDERS OF LONG BEACH
MORTGAGE LOAN TRUST 2005-
WL3, ASSET-BACKED
CERTIFICATES, SERIES 2005-
WL3, Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-05554-
2018.
Opinion delivered by Justice
Breedlove. Justices Molberg and
Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED AND RENDERED** in part. We **REVERSE** that portion of the trial court's judgment awarding attorney's fees to appellee and render judgment deleting that award. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellee Deutsche Bank National Trust Company, as Trustee, in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2005-WL3, Asset-Backed Certificates, Series 2005-WL3, recover its costs of this appeal from appellants Jack Stadtman and Sarah Stadtman.

Judgment entered April 13, 2023