WIDEMAN v. COLEMAN et al. (No. 1260—5289.)

Commission of Appeals of Texas, Section A. June 5, 1929.

White & Yarborough and W. N. Coombes, all of Dallas, for plaintiff in error.

Collins & Houston, of Dallas, for defendants in error.

CRITZ, J. Mary E: Coleman, Iva D. Hickman, and Susie R. Whitley, all married daughters of L. W. Savage, deceased, each joined pro forma by her husband, filed this suit in the district court of Dallas county, Tex., against Herschel Wideman, individually and in his capacity as administrator of the estate of Mrs. Cora E. Savage, deceased. The purpose of the suit was to recover the title and possession of a certain lot of land located in the city of Dallas, Tex. At the close of the testimony, the trial court instructed a verdict for . Herschel Wideman. Mary E. Coleman et al. duly appealed to the Court of Civil Appeals for the Fifth District at Dallas, which court reversed the judgment of the trial court and remanded the cause for a new trial. 8 S.W.(2d) 792. The cause is now before the Supreme Court on writ of error granted on application of Herschel Wideman.

For convenience, we will hereinafter designate the parties as they stood in the trial court—Mary E. Coleman et al. as plaintiffs, and Herschel Wideman as defendant.

It is shown by the record that L. W. Savage and Cora E. Savage were married in 1890. No children were born to this marriage. L. W. Savage had been married prior to his marriage to Cora E. Savage, and to this former marriage five children were born, three of whom are the daughters who bring this suit. The remaining two children deeded all their interest in the lot in question to Mary E. Coleman prior to the filing of the suit. The lot in controversy, together with an adjoining lot, was deeded to L. W. Savage on June 4, 1904, while he was married to the second wife, and the entire consideration for the two lots, $750, was paid in cash. Later improvements of a valuable nature were erected on the lot in question, and L. W. and Cora E. Savage moved thereon, and it became, and remained, their homestead until their respective deaths. L. W. Savage died first, and Cora E. Savage several years later, in 1926. L. W. Savage died leaving no will. Cora E. Savage left a will in which she devised all of her estate to defendant, who was her nephew. This will is general in form, and devises all of the estate of every kind and character, etc. It is shown that Mrs. Cora E. Savage, at the time of her death, owned other property not claimed to be community. The plaintiffs claim the lot as the separate property of their deceased father, claiming same to have been purchased with money devised to L. W. Savage by a deceased brother. The defendant claims an undivided one-half interest in the lot under the will of Cora E. Savage. Defendant's answer also contains a plea as to improvements paid for out of the community.

It is further shown by the record that L. W. Savage had a brother who died in the state of Virginia in January, 1903, leaving a will in which L. W. Savage was named as a beneficiary, and that L. W. Savage received as his part of this brother's estate the sum of $2,014.89, for which he executed a written receipt of date June 10, 1903. This original receipt is in evidence. A short time prior to the death of the brother in Virginia, L. W. Savage, while conducting a small grocery business in Dallas, had financial troubles and went through bankruptcy. After being discharged in bankruptcy, he again engaged in the grocery business on a small scale. It will here be noted that L. W. Savage received the money from his deceased brother's estate on June 10, 1903, and according to the deed purchased the lot in question, paying cash therefor on June 4, 1904. The evidence further tends to show that he was a man of very limited means and income all during the times mentioned.

In addition to the above circumstances, the following facts appear in the record:

The witness Rev. B. O. Sallee testified, in substance: That he was pastor of the Hickory Street Baptist Church in Dallas, Tex., and had been such for the past 15 years; that he was well acquainted with both L. W. and

Cora E. Savage during their lifetimes; that both had been members of his church; that he had visited Cora E. Savage in her home after the death of her husband. This witness then testified: "I saw her there. She told me something of the interest she claimed in the property. The occasion was like this. She was complaining a little about the conditions being terrible, and being worried with roomers and renters, and I said 'Well, why don't you just move out and move into your other property.' She said: 'I only have a life interest in this, and if I move out, I will lose that interest.'"

The witness Mrs. R. A. Kimberly testified, in substance, that she knew Mrs. Cora E. Savage during her lifetime and after her husband's death; that she frequently visited her in her home, and was intimately acquainted with her. This witness then testified as follows: "I have heard her make statements about the nature of her ownership or claim to that property. One afternoon I went by the place, and she said she didn't like the location; that she really didn't like to live there, but if she moved away the place would go to the girls; that it was theirs; she only had a life estate in it."

The witness Mrs. Susie Badger testified, in substance, as follows: That she knew both L. W. and Cora E. Savage during their lifetimes; that she had known Mrs. Savage 35 years before her death; that she had visited her often in her home after Mr. Savage's death. This witness then testified: "I have heard her speak of the nature of her ownership of that property many times. She always spoke of it as belonging to the girls, but that she had a life estate in it. That's the way she spoke of it."

The witness Mrs. Joe White testified, in substance, that she was well acquainted with L. W. Savage and his wife, Cora E. Savage, during their lifetimes; that she was well acquainted with the place in question; that she was very friendly with Mrs. Savage. This witness then testified: "I have heard her say after the death of Mr. Savage that the girls would get that property upon her death. She said the girls would get the place after her death—she said Mary had bought out two of the girls; and when she took Mr. Wideman to send him to school, she told me the same thing—that the three girls would get the place—that Mr. Wideman would get the place on Birmingham and the girls would get the place where she then lived."

As shown by the opinion of the Court of Civil Appeals: "It was in testimony by appellant, Mrs. Mary E. Coleman, that she attended to the books of her father and had charge of his banking books; that after her father received the money from Virginia he had two accounts in different banks, one in the name of the L. W. Savage Grocery Company, which he used in connection with the grocery business, and the other in the name of L. W. Savage, which was originally in the sum of $2,089.14; that she saw the deposit slip issued to her father for this amount, and took charge of same; that she knew when the money from Virginia was received, and this account was opened at that time; that, when the land in question was bought, she saw the canceled check for $750, signed by her father, and it had been drawn against this account."

As further shown by the opinion of the Court of Civil Appeals, the above testimony of Mary E. Coleman was at first admitted, but later withdrawn from the jury on the ground that it contravened article 3716, Rev. Civ. St. of Texas 1925.

The assignments of error in this court present two questions, which we will consider in the order below stated:

First. Did the court err in withdrawing the above testimony of Mary E. Coleman from the jury? and

Second. If this testimony is eliminated, is there evidence in the record raising the fact issue as to whether the lot in question was the separate property of L. W. Savage?

We are of the opinion that the Court of Civil Appeals was in error in holding the witness Mary E. Coleman competent as a witness to testify to the above facts, under the record before us. Under article 3716, Rev. Civ. St. of Texas 1925, a witness is incompetent to testify to matters or facts that come within the statute. This statute does not disqualify a witness from testifying to facts such witness may know of his own knowledge. Harris v. Seinsheimer, 67 Tex. 356, 3 S. W. 307. However, if the witness' knowledge of such facts is a part of the transaction with, or statement by, the deceased, he is incompetent to testify thereto. Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185. This rule applies, "not merely as to statements by deceased to him, or transactions between him and the deceased, but also as to such statements to or transactions between deceased and third persons, and that, too, although occurring when the witness had no interest therein." Parks v. Caudle, 58 Tex. 216. An examination of the bill shows that Mrs. Coleman acquired all of the above facts testified to by reason and as the direct result and part of transactions between her and her deceased father. The knowledge of the facts is so inseparably connected with the transactions between the witness and her father as to make her knowledge so gained a part of the transactions themselves. Under such a record, to permit her to testify thereto would, in our opinion, violate the letter and spirit of the statute.

Of course, Mrs. Coleman may testify as to any fact that she may know of her own knowledge, provided such knowledge is not a part of a statement by or a transaction

with the father. The rule prohibiting the testimony applies with equal force to statements by the father to third persons, and to transactions between the father and third persons, as it does to statements by the father to the witness or transactions between the father and the witness. There is some testimony in the record which, from the bill before us, we are unable to say positively whether it violates the above rule. However, since the case must stand reversed, the trial court is given the above rule to govern his actions in another trial.

We then come to consider the question as to whether the trial court erred in peremptorily instructing a verdict after eliminating Mrs. Coleman's testimony to the facts above set out.

As to this question we agree with the holding of the Court of Civil Appeals, to the effect that, as a matter of law, the evidence raised an issue of fact that presents a jury issue.

■ Article 4619, Rev. Civ. St. of Texas, 1925, so far as applicable to this case, provides: "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife," and "all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. * * *"

■■ Under the above statute, the lot in question is presumed to be the community property of L. W. Savage and Cora E. Savage; it having been acquired by them during marriage. This presumption must obtain until the contrary is shown by satisfactory evidence. "Where the property has not been preserved in specie or in kind, but, as in this case, has undergone mutations and changes, it is indispensable, to maintain its separate character, that it be clearly and indisputably traced and identified." Chapman v. Allen, 15 Tex. 283. Also, "The presumption that property purchased during the marriage is community property is very cogent; and can only be repelled by clear and conclusive proof, that it was [bought] with the individual money or property of one of the partners." Chapman v. Allen, supra. (The word "bought" is supplied by us.) In spite of the above rule, and in spite of the cogency of the above presumption, when facts are offered, which, if believed by the jury, are sufficiently definite and cogent, to meet the requirements of the law, the jury should be allowed to determine the issue of fact. We think the evidence in this record, eliminating Mrs. Coleman's testimony, is sufficiently certain and cogent to present a jury issue. In other words, we hold that the circumstances, taken together with Mrs. Cora

E. Savage's repeated and emphatic statements and disclaimers to any right or title in the property except a homestead right for life; that, if she moved out, she would lose that interest; that it was theirs; that, if she moved away, the place would go to the girls; that the girls would get it after her death; that Mary had bought out two of the girls and the three girls would get the place; and that Wideman would get the place on Birmingham Streeet, etc.—are all absolutely inconsistent with any claim of ownership by Mrs. Mary E. Coleman, and are in law sufficient to present a jury issue as to the question of ownership, when taken together with the other facts shown by the record. Further, the record certainly shows some evidence, and, the Court of Civil Appeals having held it sufficient, their decision is final on that question.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause for a new trial be affirmed, but that the trial court be governed on another trial by this opinion in regard to any matters wherein this opinion differs from the opinion of the Court of Civil Appeals.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, and cause remanded to the district court for new trial in accordance with the opinion of the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.