Julius O. ADAMS et al., Petitioners,

v.

Victoria V. BARRY, Respondent.

No. B–6888.

Supreme Court of Texas.

Jan. 18, 1978.

Rehearing Denied Feb. 15, 1978.

Naman, Howell, Smith, Lee & Muldrow, Louis Muldrow and Wade Hutto, Waco, for petitioners.

Wash & Hodges, David L. Hodges, Waco, for respondent.

STEAKLEY, Justice.

The question here is whether proffered testimony in support of the probate of an alleged lost will was properly excluded by the trial court pursuant to Article 3716, Tex.Rev.Civ.Stat., commonly called the Dead Man's Statute.

George H. Adams died in 1973 and a will executed by him on July 31, 1968 was admitted to probate. A brother, Julius O. Adams, was the named beneficiary; and an attorney, Robert F. Salter, was named independent executor. Sometime later, this suit was filed by Miss Victoria V. Barry, Respondent, to set aside the earlier probate of the 1968 will, and to admit to probate an alleged lost will of Adams claimed to have been dated January 29, 1972, and to have named Miss Barry as sole beneficiary. The only evidentiary support for the alleged lost will was the testimony of Miss Barry. This was excluded by the trial court and an instructed verdict was rendered against Miss Barry. The Court of Civil Appeals reversed and remanded upon the holding that the testimony in question did not involve a transaction with the deceased and hence was not violative of Article 3716. 551 S.W.2d 792. We reverse this judgment and affirm that of the trial court.

Article 3716 provides as follows:

In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by,

the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

■ Although often criticized, this statute remains a viable part of the law of evidence in Texas and in other jurisdictions. *See* II J. Wigmore, *Evidence* § 578 at 695 (3rd ed. 1940); C. McCormick & R. Ray, *Texas Law of Evidence,* § 323, et seq. (2d ed. R. Ray & W. Young 1956); Cheek, *Testimony As To Transactions With Decedents,* 5 Tex.L.Rev. 149 (1927). *See* also, *Andreades v. McMillan,* 256 S.W.2d 477, 478–9 (Tex.Civ.App.1953, writ dism'd w. o j.). The statute is a legislative exception to the general rule that parties to a lawsuit are competent to testify, *Roberts v. Yarboro,* 41 Tex. 449 (1874), and as such it is strictly construed. *Ragsdale v. Ragsdale,* 142 Tex. 476, 179 S.W.2d 291 (1944). The statute has limited application and by its terms operates to exclude the testimony of a party in a suit by or against executors, administrators, or guardians which relates to a transaction with or statement by the decedent. *See,* Walker, *The Dead Man's Statute,* 27 Tex. B.J. 315 (1964). The statute is a rule insuring fairness between the litigants. *Holland v. Nimitz,* 111 Tex. 419, 232 S.W. 298 (Tex.Com.App., holding approved) *aff'd on other grounds on motion for rehearing,* 111 Tex. 419, 239 S.W. 185 (1921). Its purpose is to exclude the testimony of a living party pertaining to a transaction with or statement by the deceased whose death precludes rebuttal. *Holland v. Nimitz, supra,* and *cf. Martin v. McAdams,* 87 Tex. 225, 27 S.W. 255 (1894). The rule does not prohibit a party from testifying to facts from personal knowledge arising otherwise than from a transaction with or statement by the decedent. *Wideman v. Coleman,* 17 S.W.2d 786 (Tex.Com.App.1929); *Martin v. McAdams,* 87 Tex. 225, 27 S.W. 255 (1894); *Roberts v. Roberts,* 405 S.W.2d 211 (Tex.Civ. App.1966, writ ref'd n. r. e.).

A portion of the testimony of Miss Barry in her bill of exceptions was as follows:

"Q   Miss Barry, did you see—did you see a will signed by George Adams?

A   Yes, sir.

Q   What was the date of that will that was signed by George Adams?

A   January the 29th of 1972.

Q   Did you read the will?

A   Yes, sir.

Q   And, what were the terms of the will?

A   He said that I was to be the sole beneficiary of his estate as I had done likewise with mine.

Q   Was the will witnessed?

A   Yes, sir.

Q   Who was it witnessed by?

A   It was witnessed by Mr. Edwin Powell who was the attorney in with Mr. Salter at the time and Mrs. Penny who is Mr. Salter's secretary.

Q   Were all of these people in the room when it was signed?

A   Yes, sir.

Mr. Wash: Your Honor, we offer that."

It was established by questions directed to Miss Barry by the trial judge that she was testifying with respect to an occasion when she and the deceased Adams allegedly executed separate wills in which each was the named beneficiary of the other. In answer to other questions by the court, Miss Barry stated that she and George Adams went to Salter's office and were handed their respective wills in the presence of Mrs. Penny and Mr. Powell; that they each read their own will and then exchanged them and each read the will of the other; that she then signed her will and it was witnessed; and that Mr. Adams then executed his will. Mr. Powell and Mrs. Penny testified at the trial. Mr. Powell stated that he did witness a will for Miss Barry on the occasion in question but that he did not recall ever witnessing a will by George Adams. Mrs. Penny testified that on the occasion in question Mr. Salter dictated Miss

Barry's will, which she then typed and which was then executed. Mrs. Penny stated unequivocally that she did not prepare a will for George Adams and, further, that she had not, at any time, witnessed a will by George Adams.

Counsel for Miss Barry candidly states that there was a transaction with the deceased "behind what she says," but contends there was no transaction with the deceased within the provisions of Article 3716 in her testimony that she saw the will, that it was signed by Adams, and that it contained provisions naming her as sole beneficiary. We disagree.

■ Particularly pertinent in the context of the facts shown here is the observation of the court in *Holland v. Nimitz, supra.* There, in speaking of the object of the statute, the court said that death having sealed the lips of one of the parties, the law, for reasons founded upon public policy, seals the lips of the other. *See* also *Martin v. McAdams, supra.* It is apparent that in her testimony quoted above Miss Barry was not testifying to facts within her independent knowledge disassociated from the acts of the deceased, George Adams. The term "transaction" involves a mutuality or concert of action, *see Harper v. Johnson,* 162 Tex. 117, 345 S.W.2d 277 (1961), and whatever knowledge Miss Barry possessed with respect to the alleged lost will of George Adams was inseparably connected with the transaction between them. *Cf. Wideman v. Coleman,* 17 S.W.2d 786 (Tex.Com.App. 1929). *See also Stewart v. Long,* 394 S.W.2d 25 (Tex.Civ.App.1965, writ ref'd n. r. e.) in which it was ruled that the viewing by the husband of a will "laid there on the bed [by the wife] to show me what was going on" was a part of a transaction with the wife.

As noted earlier, apart from the testimony of Miss Barry, which we hold is within the proscription of Article 3716, there is no proof of the alleged lost will of George Adams that she seeks to probate. *Cf. In-* *ternational Travelers' Ass'n v. Bettis,* 120 Tex. 67, 35 S.W.2d 1040 (1931).

Accordingly, the judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

GREENHILL, C. J., concurs in the result.