Belle C. DUNN et al., Appellants,

v.

Nina DAVIS et al., Appellees.

No. 17411.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Oct. 25, 1979.

Rehearing Denied Nov. 21, 1979.

Foreman, Dyess, Prewett, Rosenberg & Henderson, Jesse R. Pierce, Gladys R. Goffney, Houston, for appellants.

Brown, Bradshaw & Plummer, Andrew C. Brown, Leo A. Kissner & Associates, Daniel C. Pappas, Houston, for appellees.

WALLACE, Justice.

The trial court awarded judgment for appellees in their suit for adverse possession of a five acre tract of land in Harris County to which appellants asserted they were record title holders. The jury found that appellee's predecessor in title, Louis Davis, adversely possessed the land from December 1945 to October 1956.

Appellants assign points of error of (1) no evidence, (2) insufficient evidence, (3) failure to instruct the jury regarding the dead man's statute and, (4) failure to sub-

mit to the jury appellants' requested definition of adverse possession. We affirm.

"Adverse possession" is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Tex.Rev.Civ.Stat.Ann. art. 5515.

To constitute "adverse possession" under the ten-year statute, the appropriation of the land must be of such character as to indicate unmistakeably an assertion of a claim of exclusive ownership in the property. *Heard v. State,* 146 Tex. 139, 204 S.W.2d 344 (1947). The proof must be clear and satisfactory. *Orsborn v. Deep Rock Oil Corp.,* 267 S.W.2d 781 (Tex.1954). Further, inferences are not indulged in favor of a limitation claimant. *Cook v. Winter,* 207 S.W.2d 145 (Tex.Civ.App.—Amarillo 1947, writ ref'd n. r. e.).

Applying these tests, we will consider the "no evidence" and "insufficient evidence" points together.

In reviewing the factual sufficiency of the evidence we must consider all of the evidence in the record before us. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

Rebecca Alford was called as a witness by the appellees and testified as follows:

Her mother and father built a house on the five acre tract adjoining the Davis tract in 1932 or 1933. This was shortly after her marriage. She visited her mother "once a week or so" and "sometimes every week" until her father died in 1950. Her mother moved from the house for three years but her sister lived in the house during that period. She visited her sister "about once every two or three weeks". These visits continued through the period of adverse possession found by the jury.

Louis Davis died in 1966 and was too sick to haul trash or to garden for about two years prior to his death. From 1932 or 1933 until two years before his death in 1966, Louis Davis kept the land fenced, he raised milo or similar grain plus vegetables such as okra and tomatoes and dumped trash such as tree limbs, etc. on

the land. The fences, grain and trash were visible from the road at all times for each year during the forties and fifties.

Elston Alford testified that he was familiar with the property starting in 1931 or 1932. In the early fifties Louis Davis gave him permission to go through the barbed wire gap which provided entrance onto the Davis property so that he could get to the adjoining Simpson tract and dump trash. He was instructed by Davis to close the gap after he went through it.

Wallace Simpson, Jr. was the son of the owner of the adjoining five acre tract. He testified that he helped his father fence their land in 1928 or 1929 and that Louis Davis fenced his land at the same time. Davis farmed the tract until the late thirties and then he started using it for dumping of trash and scrap lumber.

From the evidence the jury could have found that Davis fenced the land in 1928 or 1929 and maintained the fences through the period of adverse possession found by the jury; that Davis farmed the land each year until 1963 or 1964 according to Rebecca Alford who said that she observed the land at least each month during the entire period; and that Davis used the land as a place to dispose of dry trash on a regular basis through the entire period.

The testimony of Mrs. Alford and Mr. Simpson was contradicted by appellants' witnesses, but the jury apparently chose not to believe the contradictory testimony. This was within the province of the jury. Rule 226a T.R.C.P.

We find that fencing the 5 acre tract, farming at least a part of it each year, and using a part of it to dump trash on a regular basis was sufficient use to constitute an actual and visible appropriation of the land inconsistent with and hostile to the claim of another.

Appellants complain of the failure of the trial court to give the jury a limiting instruction regarding the dead man's statute, Art. 3716, Tex.Rev.Civ.Stat.Ann., in relation to the testimony of Nina Davis, wid-

ow of Louis Davis, as it affected the interests of the remaining appellees who were children and heirs of Louis Davis. The parties agree that Nina Davis was claiming an interest in one-half of the land as her community interest, not as an heir of her husband, and the statute did not apply to her interest. Since her testimony was admissible as to her interest, it properly went to the jury. It was error for the court not to give the requested limiting instruction. *Spencer v. Schell*, 107 Tex. 44, 173 S.W. 867 (1915), *Harris v. Warlick*, 42 S.W. 356 (Tex. Civ.App.1897, no writ). The jury properly heard the evidence in relation to Nina Davis' claim, so the only effect of the limiting instruction would be to preserve appellant's "sufficiency of the evidence" points as to the interest of the heirs. If there was sufficient evidence from other witnesses to sustain the judgment as to the heirs the error would be harmless. As set out above, we find that the evidence from Mr. and Mrs. Alford and Mr. Simpson was sufficient.

Appellants also complain that the testimony of Alma May Davis Smith and Louis Lester Davis was in violation of the dead man's statute and should have not have been admitted. Their testimony was not concerning facts within their independent knowledge disassociated from acts of Louis Davis. *Adams v. Berry*, 560 S.W.2d 935 (Tex.1978). However, this testimony was also admitted as to the claims of Nina Davis and the appellant was entitled to only a limiting instruction to that effect. The jury properly heard the evidence as it pertained to Nina Davis' claim, so we again have a situation where the court erred in not giving the limiting instruction, but the effect of the instruction would have been only to preserve appellant's "sufficiency of the evidence" point. In both instances referred to above, in reviewing the evidence, the testimony of Nina Davis, Alma May Davis Smith or Louis Lester Davis will not be considered as it relates to the claim of the heirs. We find the evidence from witnesses who were not heirs of Louis Davis to be sufficient to sustain the verdict, so the error of the trial court was harmless.

Appellants also complain that the trial court erred in not submitting their requested definition of "adverse possession". The court was required to submit only one proper definition. The definition submitted was "the term 'adverse possession' as used in the following special issue means an actual, visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another". This was a proper definition. Art. 5518 Tex.Rev.Civ.Stat. Ann., *Brown v. Fisher*, 193 S.W. 357 (Tex. Civ.App.—Beaumont 1917, writ ref'd).

The judgment of the trial court is affirmed.

COLEMAN, C. J., and DOYLE, J., also sitting.