

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00374-CV

MISTY KEENEY AND MONTY KEENEY D/B/A
SHOOTIN' HOOPS GUMBALLS, APPELLANTS

V.

JOHN WILLIAMS AND CAROLYN WILLIAMS, APPELLEES

On Appeal from the County Court at Law Number 1
Tom Green County, Texas
Trial Court No. 18C161-L; Honorable Ben Nolen, Presiding

September 3, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellants, Misty Keeney and Monty Keeney, d/b/a Shootin' Hoops Gumballs, appeal an adverse jury verdict in favor of Appellees, John Williams and Carolyn Williams, in this litigation concerning the ownership of thirty-two gumball machines.[1] The jury found

---

[1] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

the gumball machines at issue were owned by the Williamses, but converted by the Keeneys, resulting in a damage award in favor of the Williamses in the amount of $55,000. The Keeneys challenge the jury's verdict through five appellate issues. We affirm.

**BACKGROUND**

This dispute arose after the death of Phil Cole. Phil owned a gumball machine business for many years. His business consisted of four to five hundred gumball machines in three states. As part of his business, Phil contracted with various people to service the machines in different locations. One of those people was Carolyn Williams, a first cousin of Phil's wife, Sandra Cole. For thirteen years, Phil and Carolyn enjoyed a working relationship in which Carolyn serviced Phil's gumball machines in Waco and the surrounding area. According to Carolyn, she and Phil were "partners" and she was responsible for one-half of the payment on the machines in that area, as well as being obligated to pay one-half of any losses.

Carolyn testified that in 2016, she and Phil entered into an oral agreement through which she purchased Phil's one-half interest in their partnership for a total of $3,500. In September 2016, Carolyn had a cash payment of $1,200, in an envelope labeled "Final Payment," delivered to Phil. This, she said, completed her purchase of the thirty-two gumball machines in question. No written agreement exists regarding the "partnership" between Carolyn and Phil or their agreement for her to purchase his one-half interest.

In 2017, Phil passed away. At that time, his gumball machine business passed to his heirs. The heirs decided to allow one of the sibling-heirs, Misty Keeney, to purchase the business in its entirety for a purchase price of $90,000. The family executed a bill of

2

sale and purchase agreement that says, in part, "Whereas purchaser [Misty Keeney] desires to purchase and sellers desire to convey to purchaser all of the gumball business of Phillip Eugene Cole, deceased." It is this language the Keeneys say led to their belief they owned the disputed gumball machines.

Sometime later, Misty called Carolyn because Carolyn's phone number was found in a gumball machine that Misty had serviced. Carolyn told Misty that her number was in all of the gumball machines she owned in the Waco area. At that point, Misty told Carolyn she and her husband, Monty, had serviced some of those machines, meaning they had removed money from them and that they owed money to Carolyn. Not long after that call, Misty contacted Carolyn again and requested a list of the machines Carolyn claimed to own. Carolyn complied and sent an email providing the addresses of forty-nine gumball machines.[2] Carolyn's list was admitted into evidence. Misty and Monty then went to each machine, changed the locks, removed the money, and put a sticker with their contact information on the exterior of the machines.

By letter dated April 10, 2017, Misty and Monty, through their counsel, demanded that Carolyn repay funds she collected from the gumball machines from September 2016 through the present time. They also informed her that her services were no longer needed. In response, the Williamses hired their own attorney and through a letter dated April 17, 2017, informed the Keeneys of Carolyn's claim to the disputed gumball

---

[2] Of the forty-nine gumball machines listed, nine were stolen, one was sold, and seven were in Carolyn's shop, leaving thirty-two gumball machines in dispute.

3

machines. The Keeneys refused to acknowledge Carolyn's claim of ownership and refused to account to her for revenues received from the disputed gumball machines.

The dispute was not resolved and, in August 2017, the Williamses filed suit against the Keeneys seeking recovery of damages arising from these events. In June 2019, the matter was tried before a jury and verdict was returned in favor of the Williamses. The jury found them to be the lawful owners of the disputed gumball machines and then awarded them the sum of $55,000 for damages arising from the conversion of those machines by the Keeneys.

**ANALYSIS**

**ISSUE ONE—TEXAS RULE OF EVIDENCE 601 ("DEAD MAN'S RULE")**

At trial and on appeal, the Keeneys challenged Carolyn's claim of ownership of the gumball machines in question. Through their first issue, the Keeneys contend the trial court erred in overruling their objections to testimony they claim violated Rule 601 of the Texas Rules of Evidence—the "Dead Man's Rule." Specifically, the Keeneys challenged the "purported oral statement or statements of Phil Cole that he conveyed his ownership interest in the Waco/Central Texas machines to Carolyn in 2003 and 2016." The Keeneys contend there was insufficient corroboration of those statements and accordingly, the trial court erred in admitting them over their numerous objections. The Williamses disagree, arguing the record contains sufficient corroboration.

As a general rule, where applicable, Rule 601 prohibits one party from testifying against an heir of a deceased declarant about an oral statement made by the deceased declarant. *Musquiz v. Keesee*, No. 07-15-00461-CV, 2017 Tex. App. LEXIS 9214, at *7-

4

8 (Tex. App.—Amarillo Sep. 28, 2017, pet. denied) (mem. op.) (citing *In re Estate of Wright*, 482 S.W.3d 650, 655 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)). In other words, as applied to the facts of this case, the "Dead Man's Rule" would prohibit Carolyn from testifying against Misty (one of Phil's heirs) concerning any oral statement Phil may have made concerning the gumball machines in question. An exception, however, exists if the party's testimony about the deceased declarant's statement is corroborated or the opposing party calls the party to testify at the trial about the statement. *See* TEX. R. EVID. 601(b)(3). Accordingly, the rule does not prohibit testimony concerning statements made by the deceased that are properly corroborated. *Musquiz*, 2017 Tex. App. LEXIS 9214, at *8 (citing *Lewis v. Foster*, 621 S.W.2d 400, 404 (Tex. 1981)).

Evidentiary rulings are "committed to the trial court's sound discretion." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). A trial court abuses its discretion when it rules "without regard for any guiding rules or principles." *Malone*, 972 S.W.2d at 43 (citation omitted). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.* (citing *State Bar of Texas v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989)). Moreover, a trial court's erroneous evidentiary ruling will not result in reversal unless the error probably caused the rendition of an improper judgment. *Malone*, 972 S.W.2d at 43 (citing TEX. R. APP. P. 44.1; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)).

As noted by the trial court, the threshold for corroborating evidence is a low one, requiring only that the evidence "tend to support some of the material allegations or issues which are raised by the pleadings and testified to by the witness whose

5

evidence is sought to be corroborated." *Quitta v. Fossati*, 808 S.W.2d 636, 641 (Tex. App.—Corpus Christi 1991, writ denied). Corroborating evidence may come from any other competent witness or other legal source, including documentary evidence. *Id.* (citations omitted). While corroborating evidence does not need to be sufficient standing alone to support the verdict, it "must tend to confirm and strengthen the testimony of the witness and show the probability of its truth." *Id.* (citations omitted). *See In the Estate of Stack*, No. 09-17-00089-CV, 2018 Tex. App. LEXIS 7127, at *50 (Tex. App.—Beaumont Aug. 30, 2018, no pet.) (mem. op.).

Here, Carolyn testified to her partnership with Phil over the years and to her purchase of his one-half interest in the gumball machines at issue. Carolyn's husband, John, also testified to his knowledge of their relationship. Because Carolyn and John are parties to the lawsuit, any testimony from them regarding Phil's statements about the agreement between Carolyn and Phil would have to be corroborated in order to be admissible under Rule 601(b).

In that regard, non-party witnesses Jody Frey, Doug Frey, Janie Lange, and Sandra Cole each testified as to their knowledge of the relationship between Phil and Carolyn. Each witness said the two had an agreeable, long-sustaining business relationship. Doug Frey testified that he had a conversation with Phil about his gumball business where Phil alluded to the fact that he had sold to Carolyn "the whole Waco area, whatever they had . . . Carolyn did buy him out." Carolyn's sister, Janie Lange, specifically testified Phil and Carolyn had a long, honest relationship that was based on a handshake. Even Phil's widow, Sandra, testified that Carolyn and Phil had a good relationship and were partners with regard to the disputed gumball machines for over thirteen years.

6

The Williamses also presented evidence showing Carolyn had possession of the ownership manual to each of the disputed gumball machines and that each manual had a serial number corresponding to the serial number of one of the disputed gumball machines. They also presented evidence that Carolyn serviced each of the gumball machines for many years and her telephone number was in each machine. In addition, Carolyn testified that she gave her sister, Janie, an envelope with the notation "Final Payment" written on it to be given to Phil. Janie testified as to her receipt of that envelope, her delivery of it to Phil, and his apparent satisfaction with the payment.

While we agree that none of this evidence standing alone would be sufficient to prove an agreement between Carolyn and Phil, we also agree that the evidence tends to confirm and strengthen the testimony of the witnesses testifying that Phil said he sold the gumball machines in dispute to Carolyn. We further note that the testimony of the non-party witnesses regarding Phil's statements concerning the sale of a portion of his business to Carolyn do not violate Rule 601 because that rule only applies to the testimony of a party or a person having an actual or direct interest in the matter litigated. *Pasley v. Pasley*, No. 07-03-0540-CV, 2005 Tex. App. LEXIS 6680, at *17-18 (Tex. App.—Amarillo Aug. 18, 2005, no pet.) (mem. op.) (citing TEX. R. EVID. 601(b); *Adams v. Barry*, 560 S.W.2d 935, 937 (Tex. 1978)). Accordingly, we cannot say the trial court abused its discretion by permitting the testimony under Rule 601. As such, we resolve the Keeneys' first issue against them.

**ISSUE TWO—TEXAS RULE OF EVIDENCE 803(24)**

By their second issue, the Keeneys contend the trial court erred in admitting certain testimony under the exception to the hearsay rule set forth in Rule 803(24). TEX. R. EVID. 803(24). That exception permits admission of statements that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace[.]" TEX. R. EVID. 803(24)(a). *See Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex. 1986) (stating that all hearsay exceptions require a showing of trustworthiness and that Rule 803(24) is founded on the principle that the ramifications of making a such a statement are so contrary to the declarant's interest that he would not have made that statement unless it were true). Here, the Keeneys contend this exception was inapplicable.

As set forth in our discussion of their first issue, evidentiary rulings are within the sound discretion of the trial court. *Malone*, 972 S.W.2d 35, 43 (citation omitted). According to the rules of evidence, hearsay is a statement made by someone other than the declarant while testifying at trial as to any matter sought to be introduced for the purpose of proving the truth of the matter asserted. *Conner v. Johnson*, No. 02-03-00316-CV, 2004 Tex. App. LEXIS 9633, at *14-15 (Tex. App.—Fort Worth Oct. 28, 2004, pet. denied) (mem. op.) (citing TEX. R. EVID. 801(d)). Consequently, any testimony relating what Phil said about selling the machines to Carolyn would be hearsay and, as such, inadmissible *unless* an exception applies to its exclusion.

8

At trial and on appeal, the Williamses contend the statements were admissible under the "statement against interest" exception found at Rule 803(24). *Conner*, 2004 Tex. App. LEXIS 9633, at *14-15 (citing TEX. R. EVID. 803(24); *Washington v. McMillan*, 898 S.W.2d 392, 397 n.5 (Tex. App.—San Antonio 1995, no writ); *Leigh v. Weiner*, 679 S.W.2d 46, 49 (Tex. App.—Houston [14th Dist.] 1984, no writ); *Peterson v. Martin*, 69 S.W.2d 484, 485 (Tex. Civ. App.—Texarkana 1934, writ dism'd)). When considering this exception, an appellate court should consider the circumstances as they existed at the time the declarant made the statement. *Conner*, 2004 Tex. App. LEXIS 9633, at *14-15 (citing TEX. R. EVID. 803(24); *Travelers Cos. v. Wolfe*, 838 S.W.2d 708, 714 (Tex. App.—Amarillo 1992, no writ)).

Here, statements made by Phil to others to the effect that he had sold the gumball machines at issue to Carolyn were, at that time they were made, clearly against his ownership interest. Accordingly, we cannot say the trial court would have abused its discretion by recognizing this exception when it ruled on this point. *See McCurry v. Farmer*, No. 06-17-00052-CV, 2017 Tex. App. LEXIS 11207, at *10 (Tex. App.—Texarkana Dec. 1, 2017, no pet.) (mem. op.) (collecting cases). Accordingly, we resolve the Keeneys' second issue against them.[3]

---

[3] We acknowledge the Keeneys contend the trial court followed flawed logic in ruling on their hearsay objection based on the statement from the trial court that the objected-to statement would be against the interest of the declarant if it were *untrue,* rather than true. Without resolving what the trial court said or meant to say, if the evidence was admissible under any theory of applicable law, and supported by the record, a trial court does not reversibly err merely because it states an incorrect basis for its ruling. *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 411 (Tex. App.—Dallas 2006, pet. denied).

**ISSUE THREE—STATUTE OF FRAUDS**

In their third issue, the Keeneys assert the trial court erred in not granting their motion for a directed verdict based on the ground that the alleged verbal agreement between Phil and Carolyn violated the statute of frauds. They argue that "[i]n the absence of proof of an enforceable agreement to purchase the machines, the conveyance of the gumball business by the Estate to Misty would defeat [the Williamses'] cause of action for conversion." In response, the Williamses argue the statute of frauds is inapplicable here because the oral contract was fully performed.

It is undisputed that there was no written agreement concerning the partnership between Phil and Carolyn or Carolyn's purchase of Phil's one-half interest in the gumball machines in question. Therefore, the ultimate question is whether a written agreement was required in this case to the extent that the trial court should have granted the Keeneys' motion for a directed verdict.

The standard of review for the denial of a directed verdict is a legal sufficiency or "no evidence" standard of review. *Blackstone Med., Inc. v. Phx. Surgicals*, *L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.) (citation omitted). When reviewing a directed verdict, an appellate court considers all the evidence in a light most favorable to the nonmovant and resolves all reasonable inferences that arise from the evidence admitted at the trial in the nonmovant's favor. *Id.* (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Mikob Props., Inc. v. Joachim*, No. 05-13-01613-CV, 468 S.W.3d 587 (Tex. App.—Dallas 2015, pet. denied) (mem. op.)).

10

Whether a contract falls within the statute of frauds is a question of law that we review *de novo.* *Petrohawk Props., L.P. v. Jones*, 455 S.W.3d 753, 764 (Tex. App.— Texarkana 2015, pet. dism'd) (citations omitted). Under the statute of frauds, "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." TEX. BUS. & COM. CODE ANN. § 2.201 (West 2009).

The statute of frauds is an affirmative defense to the enforcement of an oral agreement. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing TEX. BUS. & COM. CODE ANN. §§ 2.201(a), 26.01(a); TEX. R. CIV. P. 94; *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.)). The party pleading the statute of frauds bears the initial burden of establishing its applicability. *Duradril, L.L.C.*, 516 S.W.3d at 158 (citing *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013)). Once that party meets its initial burden, the burden shifts to the opposing party to establish an exception taking the oral contract out of the statute of frauds. *Duradril, L.L.C.*, 516 S.W.3d at 158 (citation omitted). The question of whether an exception to the statute of frauds applies is generally a question of fact. *Id.* (citing *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.—Houston [1st Dist.] 1988, writ denied)).

One exception to the statute of frauds is set forth in section 2.201(c)(3) of the Texas Business and Commerce Code. TEX. BUS. & COM. CODE ANN. § 2.201(c)(3). That provision provides, "A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable . . . with respect to goods for which

payment has been made and accepted or which have been received and accepted (Section 2.606)." *Id. See also Tex. NOM Ltd. Pship. v. Akuna Matata Invs., Ltd.*, No. 04-04-00447-CV, 2005 Tex. App. LEXIS 535, at *14 (Tex. App.—San Antonio Jan. 26, 2005, pet. denied) (mem. op.) (citing *Estate of Kaiser v. Gifford*, 692 S.W.2d 525, 526 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (oral installment agreement, payable in 300 monthly installments not barred by statute of frauds because the deceased lender made full performance)).

Here, the record contains Carolyn's testimony that she purchased Phil's one-half interest in the gumball machines in question for a total of $3,500. She also testified she made cash payments to Phil for the full amount. Specifically, she testified she made the last payment of $1,200, in cash, via an envelope delivered to Phil by her sister, Janie. Janie similarly testified to receiving an envelope from Carolyn, with "Phil Cole last payment" written on it, which she then delivered to Phil. Janie further testified that Phil received the envelope and seemed satisfied with the payment.

According to Carolyn, after delivery of the final payment, she did all of the servicing of the machines, which included keeping one hundred percent of the proceeds. John testified he had a conversation with Phil's son, Sterling, after Phil's death, and that during that conversation, Sterling stated he knew the gumball machines at issue belonged to Carolyn.

Viewing this evidence in the requisite light, we find the Williamses set forth sufficient evidence to establish an exception to the statute of frauds, to-wit: full performance of the oral agreement. Therefore, the trial court did not err in denying the

Keeneys' motion for directed verdict. *Stripe-a-Zone, Inc. v. M.J. Scotch Family Ltd. P'ship*, No. 02-16-00130-CV, 2017 Tex. App. LEXIS 3281, at *17-18 (Tex. App.—Fort Worth Apr. 13, 2017, no pet.) (mem. op.). As such, we resolve the Keeneys' third issue against them.

### ISSUE FOUR—TRIAL COURT'S COMMENT DURING VOIR DIRE

During voir dire, the parties discussed the statute of frauds and the utility of written agreements. At one point, the trial court told the panel that while written agreements are necessary in some cases, that was not the situation "in this particular case." Through their fourth issue, the Keeneys contend the trial court's comment harmed them because the issue of whether a written agreement was required was a matter of critical importance to their case and was raised throughout trial.

"All parties have a right to a fair and impartial trial before a neutral judge." *Haynes v. Union Pac. R.R. Co.*, No. 01-18-00181-CV, 2020 Tex. App. LEXIS 749, at *29-30 (Tex. App.—Houston [1st Dist.] Jan. 28, 2020, pet. filed) (mem. op.) (citing *Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.)). "One of the fundamental components of a fair trial is a neutral and detached judge." *Haynes*, 2020 Tex. App. LEXIS 749, at *29-30 (citing *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.— Houston [14th Dist.] 2003, pet. denied) (op. on reh'g)). Thus, a judge should never act as an advocate for or against any party. *Haynes*, 2020 Tex. App. LEXIS 749, at *29-30 (citation omitted). "To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed, and (2) probable prejudice to the complaining party." *Id.* (citation omitted).

13

"The discretion vested in the trial court over the conduct of a trial is great." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240-41 (Tex. 2001). To preserve a complaint that the trial court abused this broad discretion, a party generally must object to the trial court's alleged improper conduct or comment when it occurs (unless the conduct or comment cannot be rendered harmless by a proper instruction) and obtain a ruling on that objection. TEX. R. APP. P. 33.1(a); *Haynes*, 2020 Tex. App. LEXIS 749, at *29-30 (citing *Markowitz*, 118 S.W.3d at 87-88) (holding that party must object to judge's improper comment when it occurs and obtain ruling to preserve error for appellate review and rejecting complaint of bias where transcript of alleged comment was not made part of appellate record)).

> In this case, during voir dire, the following exchange took place:
>
> Keeneys' Counsel: One of the things that [the Williamses' counsel] talked about was handshake deals and honor; and I think we would all agree that that's an ideal way to operate is if we can work solely based on handshake deals, that's—that's ideal. But do we -- do we also understand that there may be rules or laws that require paperwork to document things; correct? Mr. --
>
> Williamses' Counsel: Excuse me just a minute. Your Honor, I'm going to object to that. There's no law that requires something to be in writing that I know of. He stated some laws require stuff to be in writing. I'm not aware of any.
>
> Keeneys' Counsel: Judge, I'm not going to go into the specifics of the case, but –
>
> The Court: Right. Well, that's -- that's not going to be applicable in this particular case, but there are some things that the law may require a written contract for depending upon the nature of it or the size of it or if it's for real estate or whatever that may require that. That's not what we're dealing with here.
>
> Williamses' Counsel: Thank you, Your Honor.
>
> The Court: So, I'll overrule the objection, but with that explanation.

14

From this exchange, it is clear counsel for the Keeneys never objected to the trial court's comment that a written document was "not going to be applicable in this particular case." Indeed, counsel never indicated in any way that this comment was problematic. Because the Keeneys never brought this issue to the attention of the trial court and never obtained a ruling on an objection, they failed to preserve this issue for our review. *Haynes*, 2020 Tex. App. LEXIS 749, at *29-30 (citing *Markowitz*, 118 S.W.3d at 87-88). Consequently, we overrule the Keeneys' fourth issue.

### ISSUE FIVE—SUFFICIENCY OF THE EVIDENCE SUPPORTING JURY VERDICT

In their last issue, the Keeneys challenge the factual sufficiency of the evidence supporting the jury's award of damages in favor of the Williamses in the amount of $55,000. The Keeneys contend there was no evidence to support that amount. Alternatively, the Keeneys contend the "scant" evidence offered contradicted the testimony that Carolyn's purchase of Phil's one-half interest in the gumball machines at issue for $3,500 was a "fair deal."

When a party attacks the factual sufficiency of an adverse finding on an issue on which it did not have the burden of proof, the party must demonstrate that the adverse finding is so against the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *In re Wagner*, 560 S.W.3d 309, 319-20 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (citing *Francis*, 46 S.W.3d at 242); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co*., 766 S.W.2d 264, 276 (Tex. App.—Amarillo 1988, writ denied). In conducting our review, we must examine, consider, and weigh the entire record to determine if there is some probative evidence to support the finding and, if there is, we must determine whether that evidence is so weak or the finding so contrary to the

15

overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.* In so doing, we note that "the jury is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary." *In re Wagner*, 560 S.W.3d at 324 (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

Here, the jury had before it sufficient evidence to support an award of monetary damages to the Williamses. First, the jury heard testimony that in 2003, Phil took out a $14,000 loan to purchase the gumball machines he and Carolyn placed in the Waco area. Carolyn also testified she and Phil paid off that debt in one year and one month, giving some indication of their income earning capacity. Second, Carolyn testified that she was asking for monetary damages "[b]ecause [the Keeneys] took money out of my machines for two -- a little over two years." She also stated that the Keeneys had damaged her business, not repaid any of the money taken when the locks were changed, and they had not returned the gumball machines to her or accounted for any revenues during the conversion. Third and, perhaps most tellingly, the jury had before it the testimony from Misty that she purchased approximately 125 gumball machines from her father's estate for $90,000. In that regard, the *Purchase Agreement* between Misty and her family was also admitted into evidence and included the following information:

|  | Total | Purchased Assets |
|---|---|---|
| Machines | $55,000 | $45,833 |
| Inventory on hand | 15,000 | 12,500 |
| Routes and good will | 20,000 | 16,667 |
| Total | $90,000 | $75,000 |

16

Here, the record indicates Carolyn claimed she was being deprived of thirty-two gumball machines.  From information available to the jury, it could have calculated the amount of damages suffered by Carolyn from the loss of the gumball machines alone.  In addition, the jury heard evidence that the Keeneys had collected the proceeds from the gumball machines for more than two years, and that the gumball business was both successful and profitable.  While we acknowledge that is impossible to know exactly how the jury arrived at the damage figure of $55,000, and that there was contrary evidence regarding the value of the gumball machines and the potential revenue during the period of dispute, we cannot say that this evidence was so significant that it rendered the jury's finding clearly wrong and manifestly unjust.  Accordingly, we find the evidence factually sufficient to support the jury's award of damages.  As such, the Keeneys' fifth and final issue is overruled.

### CONCLUSION

Having resolved each of the Keeneys' issues against them, we affirm the judgment of the trial court.


Patrick A. Pirtle
Justice


Quinn, C.J., concurring as to issues one, two, three, and four.
Doss, J., concurring.

17